Irene **GARFIELD**, Plaintiff-Appellant,

v.

Richard S. **SCHWEIKER**, Secretary of Health and Human Services, Defendant-Appellee.

No. 82–2643.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 16, 1983.*

Decided April 24, 1984.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Emory Andrew Tate, Chicago, Ill., for plaintiff-appellant.

Joan Laser, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This appeal is from a district court judgment upholding the Secretary's denial of Social Security disability benefits. For the reasons discussed below, we reverse and remand the case for a new determination.

## I.

The claimant, Irene Garfield, is a 58-year-old woman with an eighth grade education. She worked in the past as a cook, worker in

a gum factory, and bus driver.[1] She has not worked since May of 1978, when she was hospitalized complaining of dizziness, numbness, and chest pains. Since that time she has been hospitalized again and has had surgery to remove a cataract from her eye. She applied for Social Security disability benefits in October 1979 and, following an initial denial, obtained a hearing before an Administrative Law Judge (ALJ) on July 29, 1980. She was represented by counsel at the hearing.

The ALJ did not find that the medical evidence or her testimony, which he determined to be "exaggerated," established the presence of her claimed disabilities of hypertension, heart disease, arthritis, headaches, and recurrent bladder infections. He did however find that she suffered from the following significant impairments: "aphaic left eye correctable to 20/40" and "incipient cataract right eye." He further found that the visual impairment "does not significantly affect ability to perform work-related functions except for work involving binocular vision." Concluding that two of her former jobs as cook and gum factory worker did not require binocular vision and that she could still perform those jobs, the ALJ determined that she was not disabled; this determination was reached on the fourth step of the regulatory test for disability.[2]

After review of the record and a supplemental medical report, the Appeals Council adopted the decision of the ALJ, making it the final determination of the Secretary. The claimant then brought suit in district court. The district court granted summary judgment for the Secretary. The court held that the findings of the ALJ were supported by substantial evidence and that the ALJ could properly discount claimant's subjective testimony and the report of her treating physician because neither were supported by objective medical evidence. Plaintiff appeals from that decision.

## II.

The question before us is whether the record as a whole contains substantial evidence to support the Secretary's findings. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g) (1976 & Supp.1981). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). If the record contains such support, we must affirm, 42 U.S.C. § 405(g) (1976 & Supp.1981), unless there has been an error of law. *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

■ Looking only at the finding related to claimant's vision, we will first evaluate the ALJ's conclusion that she is limited only in tasks requiring binocular vision. The ALJ indicated that he relied on a December 4, 1979, report from Dr. Sol R. Kaufman.[3] That report, he stated, "indi-

1. The record contains only general descriptions of the abilities required for two of the jobs mentioned. The claimant testified that she worked for a catering service and as a short-order cook; there was no additional inquiry into the skills required for this work. She testified that in her work at the gum factory she had to lift trays of cut sticks of gum when they became full and that the trays weighed about 10 to 15 pounds each. It is not necessary for the disposition of this case to determine if this information is adequate to evaluate the relevant demands of her former work. *See Strittmatter v. Schweiker*, 729 F.2d 507 at 509 (7th Cir.1984).

2. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order. (1) Is the claim-

ant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).

3. It should be noted that the conclusions of the "treating physician," which were rejected by the ALJ and referred to by the district court, are not the medical reports discussed here. Although Dr. Kaufman did treat plaintiff's eye disorders,

cates that she has 20/30 vision in her right eye and that her left eye, from which the cataract was removed, is correctable to 20/40." The ALJ also noted the doctor's expectation of "good visual acuity after correction is complete." Although not mentioned by the ALJ, this report also states that the claimant had "no apparent [visual] field loss." There was no further discussion of claimant's vision problems in the ALJ's decision except the specific finding outlined above.

The record, however, contains two subsequent reports by Dr. Kaufman which indicate more severe visual difficulties. A report, dated June 16, 1980, was written "to certify changes in Miss Irene Garfield's opthalmological condition which should be differentiated from [the earlier report]." Dr. Kaufman noted that "[i]t was expected that she would have good visual acuity following her o.s. cataract extraction." However, shortly after the surgery, the doctor found that "Miss Garfield suffered from glaucoma which rapidly deteriorated her peripheral fields." The doctor provided specific readings indicating enlargement of the blind spot and constriction of the visual fields.[4] He concluded that "the patient has a marked, visual field loss secondary to glaucoma."

Dr. Kaufman's third report, dated December 2, 1980, was added to the record when it was reviewed by the Appeals Council. This report states that the claimant had severe glaucoma bilaterally, aphakia of the left eye, and cataract in the right eye. The doctor reported visual field indexes which showed central constricted tunnel vision.[5] He also noted "characteristic glaucomatous field producing tunnel vision with no usable peripheral vision." Dr. Kaufman concluded that although the claimant did "not quite" meet the standard for legal blindness, she was "severely impaired by [her] loss of peripheral vision [and] somewhat decreased central visual acuity."

As noted, the ALJ relied on the first report but made no reference to the second one, although the second report explicitly rejected the prognosis contained in the first. Presented with the third report, the Appeals Council stated only that "this report as well as the other evidence of record fails to show that this impairment is so severe as to preclude you from performing your past job as a cook or a gum factory worker."

Our task is to determine whether the ALJ's finding is supported by substantial

---

her regular medical doctor was a Dr. Beguesse. Dr. Beguesse had submitted a report stating that plaintiff was disabled because of cardiovascular disease, asthma, and periodic rise in blood pressure. The ALJ rejected Dr. Beguesse's report.

4. Dr. Kaufman's June 6, 1980, letter states in part:

[V]isual fields taken on 3–15–80 denote the following: In the left eye there is a marked enlargement of the blind spot and a construction of the peripheral field, the largest target to 80 degrees in the horizontal and 90 degrees in the vertical with beginning nasal step and a Bjerrum's scotoma approximately between 20 and 30 degrees at the 12 o'clock position. The right eye shows marked field constriction with roughly 20 degrees of visual field in the horizontal and 55 degrees in the vertical with a complete baring of the blind spot, [and] marked visual field loss. At the present time her most recent exam on 6–2–80 showed visual acuity to be 20/25 in the right and 20/25 in the left corrected at distance and 20/20 in the right and 20/25 in the left corrected at near. Pressures are now under control. . . .

5. Dr. Kaufman's December 2, 1980, letter states in part:

Her most recent visual field done on 10–11–80 reveals a central visual field of around 30 degrees in the horizontal × 40 degrees in the vertical for a V–2 target which is a 64 mm. target at .1 density of filter. The remainder of her visual field being absent, this is a central constricted tunnel vision. The left eye reveals horizontal field of approximately 30 degrees and a vertical field of approximately 30 degrees for V–64 mm. # 2, .1 density filter which is a fairly large target. She also [shows] some area of central dimness evaluation with a 3.0 mm. target. . . . Best corrected visual acuity at the time of this evaluation which is 11–20–80, is 20/200 in the right, correctable to 20/30 with spectacles at distance and 20/70 in the near in the right correctable to 20/50. Vision in the left eye is light perception without correction but with a cataract lens she has 20/25 to 20/30 both at distance and near. Presently under care for the glaucoma. . . .

evidence in the record as a whole. Stated another way, we must decide if a reasonable mind could accept that evidence as adequate to support the ALJ's conclusion. We are forced to hold that the evidence of record, which includes all three reports by Dr. Kaufman, does not provide substantial support for the ALJ's conclusion that the claimant's sole physical limitation is in performance of tasks requiring binocular vision. Dr. Kaufman's reports are unchallenged and are supported by medical findings. In relying on the first report, the ALJ acknowledged Dr. Kaufman's credibility, and there is nothing to indicate that the later reports are in any way less credible. The two most recent reports indicate serious loss of peripheral field amounting to tunnel vision, a significantly more serious deficit than loss of binocular vision. Without some reason to disregard these later statements, it is not reasonable to look only to the first report and conclude that it states the whole of her vision problem. Since the finding regarding the claimant's visual abilities is critical to the determination that she is not disabled for purposes of receiving Social Security benefits, we cannot say that the determination in this case is supported by substantial evidence.

### III.

In two recent cases, this court has considered specific questions regarding the information necessary for the courts to properly review Social Security disability determinations. In *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir.1984), we held that to determine that a claimant is able to return to her former work, the ALJ must compare the demands of that work with the claimant's existing physical abilities. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), we held that to reject the claimant's

testimony about his or her physical condition, the ALJ must specifically conclude that the claimant's testimony is not credible. The instant case raises somewhat related concerns concerning how medical evidence should be handled.

As we stated in *Zblewski*, written evaluation of every piece of testimony and evidence submitted is not required. However, the ALJ must articulate at some minimal level his analysis of the evidence in cases where considerable evidence is presented to counter the agency's position. Slip op. at 7. Such a rule applies in this case as well. If there were some reason for the ALJ to disregard Dr. Kaufman's June 1980 report and for the Appeals Council to essentially disregard the December 1980 report, those reasons should have been stated. We can discern no obvious reason to question the accuracy of those reports.

But the problem presented here goes beyond the ALJ's failure to articulate reasons for his handling of the evidence; the more serious concern in this case is the basic consideration given to the evidence. While it is often impracticable and fruitless for every document to be discussed separately, an ALJ may not select only the evidence that favors his ultimate conclusion. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982). His written decision should contain, and his ultimate determination must be based upon, all of the relevant evidence in the record. In this case, nothing in the ALJ's decision and very little in the Appeals Council's decision [6] even acknowledged the existence of the later reports, although those reports quite clearly and by their own terms indicated that the claimant's visual limitations were more serious than initially diagnosed.

---

**6.** The Appeals Council's decision stated, in relevant part, the following:

In reaching this conclusion [that there is no basis in the regulations for granting the request for review], the Appeals Council considered the report dated December 2, 1980, from Dr. Sol. R. Kaufman, D.O. Although this report shows that you have a visual im-

pairment, this report as well as the other evidence of record fails to show that this impairment is so severe as to preclude you from performing your past job as a cook or a gum factory worker. Therefore, the Council concludes that the additional evidence does not affect the conclusion reached in the administrative law judge's decision.

■ Unfortunately, the district court's opinion did not contain any references to the medical evidence contained in the record. The only comment regarding claimant's argument on this point is one sentence: "Review of the transcript of the record reveals however, that the decision of the Secretary is supported by substantial evidence." Again, this provides no notice that there is important evidence beyond that mentioned in the ALJ's decision.[7] This court became aware of the contents of Dr. Kaufman's later reports only through comments in the brief on appeal and through our own review of all 205 pages of the record. While it is our duty to make such a review, *McNeil v. Califano*, 614 F.2d 142, 146 (7th Cir.1980); 42 U.S.C. § 405 (1976 & Supp.1981), we should not encounter surprises of this magnitude when we do so. Each reviewing court is obliged to review all of the evidence contained in the record to determine if the Secretary's opinion is supported by substantial evidence. While a reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Secretary, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), it must be more than an uncritical rubberstamp. *McNeil v. Califano*, 614 F.2d at 146.

■ The decision of the ALJ must be based on consideration of all relevant evidence, *Whitney v. Schweiker*, 695 F.2d at 788; *Cotter v. Harris*, 642 F.2d 700, 704 (3rd Cir.1981); 20 C.F.R. § 404.1503(a)

(1983), and the reasons for his conclusions must be stated "in a manner sufficient to permit an informed review." *Holndoner v. Schweiker*, 542 F.Supp. 739, 742 (N.D.Ill. 1982). *See also Strittmatter v. Schweiker*, at 509; *Zblewski v. Schweiker*, at 77; *Cotter v. Harris*, 642 F.2d at 705–07. We hold that all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand should be considered and discussed by the ALJ. The decision should contain and should be based upon a fair and impartial presentation of the medical evidence submitted by the claimant or obtained from other sources.

IV.

We find that the medical evidence contained in the record as a whole does not support the ALJ's finding that this claimant's visual impairment limits her only in the performance of tasks requiring binocular vision. This finding was essential to the conclusion that she could perform her previous jobs and, therefore, did not qualify for disability benefits. Consequently, we reverse the judgment of the district court with instructions to remand the case to the Secretary for further proceedings consistent with this opinion.[8] Because remand is necessary for this reason, we do not address the other issues raised by the claimant: whether there was substantial evidence to support the ALJ's finding regarding her other impairments and wheth-

---

7. We also note that this case was not referred to a federal magistrate at the district court level. In our experience, the magistrates have frequently done excellent jobs in providing a thorough overview of the evidence and in articulating or highlighting the most critical legal questions presented in these cases. In *Zblewski*, for example, the critical issue—the treatment which should be accorded the claimant's testimony—was the focus of the magistrate's report and the district court's opinion. (At 608–609) That we did not concur with the district court's resolution of the issue does not mean that we did not benefit from the complete and thoughtful consideration of the question.

8. The Social Security Act, as amended in 1980, provides for remand of cases in several situa-

tions, none of which clearly apply in this case. The language of 42 U.S.C. § 405(g) (1976 & Supp.1981) indicates that the court may remand a case either upon motion of the Secretary for good cause shown or upon a showing that there is new, material evidence and that there is good cause for the claimant's failure to incorporate that evidence into the record. However, other courts have held and the legislative history indicates that remand is also proper when the findings of the Secretary are not supported by substantial evidence but do not provide sufficient evidence to support a reversal and a finding that the claimant is disabled. *See, Abeuf v. Schweiker*, 649 F.2d 107, 115–116 (2nd Cir.1981); H.R. Rep. No. 96–100, 96th Cong., 1st Sess. 13 (1979).

er her subjective complaints and the testimony of her regular treating physician were properly disregarded. We also do not address the sufficiency of the ALJ's inquiry into the specific demands of her former work as they relate to her present physical capabilities.

REVERSED AND REMANDED.