845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Hazel MORRIS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 86-5875.
 United States Court of Appeals, Sixth Circuit.
 April 18, 1988.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Hazel Morris, appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (the Secretary) in this action seeking review of the denial of a period of disability, disability insurance benefits and supplemental security benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On December 19, 1987, claimant filed a claim for disability insurance benefits alleging "bad eyes" as her disability. Her claim was denied initially and upon reconsideration. She requested a hearing which was held before an Administrative Law Judge (ALJ) on May 3, 1985. On July 31, 1985, the ALJ issued his decision denying benefits. The Appeals Council denied review on November 15, 1985 and the ALJ's decision stood as the final decision of the Secretary. The claimant filed this action for judicial review of the Secretary's decision pursuant to 42 U.S.C. 405(g). The district court granted summary judgment for the Secretary, finding his decision to be supported by substantial evidence, and dismissed the action. This timely appeal followed.
 
 
 3
 The following evidence was admitted at the December 19th hearing.
 
 
 4
 At the time of the hearing, claimant was forty-nine years old. She had been employed from 1965 until 1978 packing hoses and sprinklers for a plumbing appliance manufacturer and from 1978 until 1983 as a machine operator. Claimant testified that her vision is affected by a cobweb in the left eye and two black spots in the right eye. Her vision had always been poor, but she believed it had worsened within the past year. She testified that she watches television and reads the Bible for short durations at a time, cooks and does housework. On April 27, 1983 the date of alleged onset of disability, she voluntarily left her job and moved to Tennessee. She stated that she quit her job and moved so that she and her husband could be close to his ailing mother.
 
 
 5
 The following relevant medical evidence was also admitted. On November 21, 1983, Dr. Steven Anderson, after examining the claimant, concluded that she had "congenital nystagmus[1] probably motor nystagmus" and "low vision with best correctible vision being 20/70 in each eye." On February 2, 1984, Dr. Stewart Lawwill noted that claimant gave a history of poor vision all her life and after an examination concluded that she had congenital nystagmus, vision correctible to no better than 20/70, and that her condition is stable and permanent. On March 29, 1985, Dr. Anderson repeated his conclusions concerning claimant's medical condition. He added that she would not be able to perform tasks that would require excellent visual acuity and opined that her condition "would prevent her from entering the work force for most jobs that are available, but I am sure that there is some form of employment that she would undertake, if necessary." Finally, on May 2, 1985, Dr. James Richmond made the same findings concerning claimant's condition and opined that he felt the condition would "keep her from engaging in reasonable employment."
 
 
 6
 The ALJ also had before him a report from Benjamin Johnston, a vocational expert, who in answer to written question posed by the ALJ[2] found that
 
 
 7
 The skills involved in [claimant's previous jobs] would be those involving machine tending, finger dexterity and manual dexterity. These same skills are readily transferable to a wide range of jobs in the national economy. Assuming Ms. Morris can perform medium work not requiring more than gross visual acuity, there are all manner of jobs in the economy that would meet this criteria.... Assuming Ms. Morris could perform light work not requiring more than gross visual acuity she could return to her past work [and jobs meeting this criteria existed in the economy].
 
 
 8
 Finally, the evidence included conflicting Vocational Specialist Comments. On March 25, 1984, B.J. Jackson concluded that claimant could not do vocationally relevant past work. On November 6, 1984, George Harris came to the opposite conclusion.
 
 
 9
 After reviewing the evidence, the ALJ found that
 
 
 10
 Considering her manner and demeanor as a witness and in light of the evidence as a whole, claimant's testimony was not fully credible....
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 The claimant's impairment does not prevent the claimant from performing her past relevant work or other work existing in the regional economy as cited by the vocational expert witness.
 
 
 14
 The claimant was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(c) and 416.920(c).
 
 
 15
 In challenging the ALJ's decision denying benefits the claimant argues that the ALJ erred in failing to articulate reasons for discrediting her testimony, that the questions submitted to the vocational expert contained improper assumptions, and that the vocational expert erroneously identified worker traits as skills. The Secretary argues that his decision is supported by substantial evidence.
 
 II.
 A.
 
 16
 Claimant's initial argument is that the ALJ erred by failing to enunciate any valid reason for finding her testimony not credible. Appellant cites to Zblewski v. Schweiker, 732 F.2d 75 (7th Cir.1984) in support of her position. In Zblewski the court came to the following conclusions concerning an ALJ's obligation to articulate reasons for rejecting evidence:
 
 
 17
 It is more than merely 'helpful' for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review. As the Third Circuit put it in Cotter v. Harris, 642 F.2d 700, 705 (3d Cir.1981), when the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'
 
 
 18
 This court is not unmindful of the heavy and unique burden placed upon ALJs in Social Security Act cases. We emphasize that we do not require a written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.
 
 
 19
 Zblewski, 732 F.2d at 79. See also Hurst v. Secretary of Health & Human Servs., 753 F.2d 517, 519 (6th Cir.1985). The ALJ made the following finding concerning the claimant's credibility: "Considering her manner and demeanor as a witness and in light of the evidence as a whole, claimant's testimony is not fully credible." Also, in evaluating the evidence the ALJ concluded that
 
 
 20
 Her testimony that she cannot work because of her vision is inconsistent with her testimony that she has continued to look for jobs. She further claimed that employers would not hire her because of lack of education. Apparently, claimant's vision and lack of education have not prevented her from being hired in the past as she has a steady work record for many years. Also, her poor vision was not the reason she left her job in April 1983.
 
 
 21
 Given the ALJ's finding and evaluation of the evidence, we find claimant's first argument to be meritless.
 
 B.
 
 22
 Claimant's second argument concers the questions submitted to the vocational expert and his conclusions concerning transferable skills. The Secretary does not specifically counter these arguments, but argues that his decision is supported by substantial evidence.
 
 
 23
 Section 405(g) specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 838, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 24
 In reaching his finding that claimant was not under a disability, the ALJ found that claimant's impairment did not prevent her from performing her past relevant work or other work existing in the economy. In making the former finding, the ALJ did not rely on the report of the vocational expert. A finding of "not disabled" must be made if an individual is capable of performing work he or she has done in the past. 20 C.F.R. 404.1520(e). Because we conclude that the ALJ's finding that claimant could perform her past work is supported by substantial evidence, we do not address claimant's arguments relating to the vocational expert's report.
 
 
 25
 The ALJ's finding is supported by the following evidence.
 
 
 26
 Claimant's testimony indicated that she did not leave her past work on account of her poor eyesight. She also admits that her eyesight has been poor most of her life. None of the doctors reports contradict this or indicate that the problem had recently worsened. She can do housework and yardwork. She watches television and occasionally reads. Her past work included packing hoses and sprinklers into boxes and running parts through a machine, which she was able to do despite her poor vision. Her recent attempts in seeking employment were unsuccessful due to her limited education as well as her poor vision.
 
 
 27
 Having concluded that the ALJ's finding concerning claimant's ability to perform past relevant work is supported by substantial evidence, we need not and do not reach the issues raised concerning the vocational expert's report.
 
 
 28
 Accordingly, the decision of the Secretary is AFFIRMED.
 
 
 
 [1]
 Nystagmus is an involuntary rapid movement of the eyeball, which may be horizontal, vertical, rotary, or mixed. Dorland's Illustrated Medical Dictionary 1030 (24th ed. 1965)
 
 
 [2]
 Due to scheduling difficulties, the vocational expert could not appear at the hearing. The claimant did not object to the procedure of submitting written questions, but did object to the substance of the questions