Darleen THOMPSON, Plaintiff,

v.

Louis W. SULLIVAN, M.D.,[1] Secretary, U.S. Department of Health and Human Services, Defendant.

No. 88 C 6104.

United States District Court, N.D. Illinois, E.D.

April 11, 1990.

Linda Rothnagel, Bernard H. Shapiro, Prairie State Legal Services, Inc., Waukegan, Ill., for plaintiff.

Anton R. Zalukas, U.S. Atty., Linda A. Wawzenski, Asst. U.S. Atty., Chicago, Ill., for defendant.

---

1. Pursuant to Fed.R.Civ.P. 25(d), Louis W. Sullivan is substituted as defendant in this action. He succeeded Otis R. Bowen, M.D., on March 1, 1989.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Darleen Thompson ("Thompson") brings this action challenging the decision of defendant Louis W. Sullivan ("Secretary") denying her application for social security disability benefits under the Supplemental Security Income ("SSI") program of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (1982 & Supp.1987). Before this court are the parties' cross motions for summary judgment. For the reasons set forth below, we grant Thompson's motion and remand the case to the Secretary for further consideration.

## FACTS

Born on November 12, 1931, Thompson received a high school equivalency diploma and additionally attended two years of vocational training in secretarial and business skills (A.R. 46, 100). She worked for over ten years as a clerk typist with the civil service (A.R. 100) but claims that she was forced to leave that job due to arthritis in her hands, which impeded her typing ability (A.R. 51). For the following five years, Thompson was employed in retail sales (A.R. 100), and beginning in June of 1985, she held two jobs—one as a product demonstrator and coupon distributor at retail stores (A.R. 50) and the second as a telephone solicitor (A.R. 48). On February 5, 1987, while at her telephone soliciting job, Thompson tripped over a telephone wire and suffered a displaced intercapsular fracture of the neck of her left femur (A.R. 53, 176). The same day, an orthopedic surgeon, Dr. Gerald Goshgarian, operated on her hip and inserted four cannulated pins (A.R. 141). She was released from the hospital on February 22, 1987, but as of May 25, 1988, the date of the Appeals Council's (and therefore the Secretary's) final decision, Thompson had not returned to work.

Thompson initially filed an application for SSI benefits on March 3, 1987, which was denied on April 20, 1987; nor were her efforts rewarded on reconsideration. She requested—and received—a hearing before an Administrative Law Judge ("ALJ"), which was held on December 8, 1987, but which did not convince the ALJ of the merit of her claim. On May 25, 1988, the Appeals Council of the Social Security Administration denied Thompson's request for review, making the ALJ's decision the final decision of the Secretary. Thompson now asks this court to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) (1982), asserting that the Secretary improperly evaluated Thompson's claim of disabling pain and therefore erroneously denied her application for benefits.

## DISCUSSION

For a claimant to be eligible for SSI benefits, he must demonstrate that he was disabled by virtue of an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1982). Regulations promulgated by the Social Security Administration establish a five-step sequential inquiry that must be followed in determining whether a claimant merits benefits:

The first inquiry under the sequence concerns whether a claimant is currently engaged in substantial gainful employment. If it is found that he is, the claim is denied without reference to the other steps in the sequence. If he is not, the second inquiry is whether the claimant has a "severe" impairment. If he does not, the claim is denied. If a severe impairment is present, the third inquiry is whether such impairment meets or equals one of the impairments listed under Appendix I to Subpart P of the Administrative Regulations No. 4. If it does, the claim is approved. If it does not, the fourth inquiry is whether the claimant's impairments prevent him from performing his past relevant work. If he is found to be capable of returning to his past relevant work, the claim is denied. If he is not found to be so capable, the fifth and final inquiry is whether the

claimant is able to perform other forms of substantial gainful activity, considering his age, education, and prior work experience. If he is not the claim. is approved.

*Cannon v. Harris,* 651 F.2d 513, 517 (7th Cir.1981); *see* 20 C.F.R. § 404.1520 (1989).

In the present case, the ALJ determined that Thompson, who had not been employed since her injury on February 5, 1987 (step one), had suffered a severe impairment (step two), but that this condition did not meet any of the listed impairments (step three). The ALJ found further that, at least as of December, 1987, Thompson had regained the residual functional capacity to perform her past relevant work as a telephone solicitor (step four), and therefore her impairment did not last the requisite 12 months. It is the ALJ's analysis at step four that Thompson contests; she argues that the ALJ failed to evaluate the non-medical evidence of her pain, including her own subjective complaints and the corroborating testimony of her friend Mrs. Watson, a witness at the administrative hearing.

In reviewing the Secretary's denial of benefits, this court is not free to make *de novo* factual determinations but rather must uphold the decision if the record as a whole contains substantial evidence to support it. *See Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir.1984). Of course, an error of law warrants reversal "irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980). Evidence is "substantial" if " 'a reasonable mind accepts [it] as adequate to support [the] conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)).

### 1. Standard for Evaluating Pain

 Severe, disabling pain may serve as the basis of an award of SSI benefits provided there is an objective finding of a medical impairment that could reasonably be expected to produce the pain. *See* 42 U.S.C. § 423(d)(5)(A) (Supp V 1987); *Walker v. Bowen,* 834 F.2d 635, 641 (7th Cir. 1987); *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir.1987). An objectively adduced impairment will be found reasonably capable of producing pain if the claimant can establish "a loose nexus ... between the pain-causing impairment and the pain alleged." *Luna v. Bowen,* 834 F.2d 161, 165 (10th Cir.1987); *cf. Sparks v. Bowen,* 807 F.2d 616, 618 (7th Cir.1986) (requirement that claimant "show an objectively verifiable abnormality is designed to screen out claims by hypochondriacs and goldbricks"). Thus, the disabling pain of which a claimant complains need not inevitably or even ordinarily flow from the underlying objective impairment, *see Howard v. Heckler,* 782 F.2d 1484, 1488 (9th Cir.1986); *Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1979); to impose such a requirement would be to ignore the fundamentally idiosyncratic nature of pain. *See Howard,* 782 F.2d at 1488; *Marcus,* 615 F.2d at 28. It follows, then, that the Secretary may not deny a claim solely because the *severity* of the pain is not supported by the objective medical evidence, *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); once the loose nexus is established, the Secretary must consider subjective complaints of pain. *See Luna,* 834 F.2d at 165; *Lundquist v. Heckler,* 670 F.Supp. 781, 785 (N.D.Ill.1985). The Social Security Administration, mindful of the difficulties inherent in proving and quantifying pain, has promulgated a ruling that lays out a standard for the evaluation of pain. S.S.R. 88–13; *see generally Simmons v. Heckler,* No. 83 C 5049, 1989 WL 27122, 1989 U.S. Dist. LEXIS 2947 (N.D.Ill. March 16, 1989).[2] In cases

---

**2.** While social security rulings do not have the effect of law and are not binding on this court, they establish precedent that must be followed by the Secretary. *Lauer v. Bowen,* 818 F.2d 636, 639–40 & n. 9 (7th Cir.1987); *Social Security Law and Practice* § 1.18 (1987). Moreover,

these rulings, which represent the Secretary's own interpretation of the regulations he promulgated pursuant to the Social Security Act and of this authorizing statute itself, "must be sustained [by the district court] unless determined to be unreasonable." *Hubbard v. Califano,* 596

where the full extent of the alleged pain is not supported by the objective medical evidence, S.S.R. 88–13 requires that the ALJ explore the subjective complaints by turning to other indicators of the severity of the pain:

> In developing evidence of pain or other symptoms, it is essential to investigate all avenues presented that relate to subjective complaints. . . . In evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function.

*See also Polaski,* 739 F.2d at 1322.

### 2. Objective Medical Evidence of Impairment

■ Although the ALJ acknowledged in his decision that subjective complaints of pain will only be evaluated if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce" the pain (A.R. 28), it is unclear from the record whether he made the threshold finding that Thompson suffered such a medically determinable impairment or whether he simply concluded that an objective foundation for her pain was lacking. A valid finding that the record was devoid of *any* objective medical evidence of an impairment that could reasonably cause pain would have entitled the ALJ to ignore Thompson's subjective complaints entirely; this approach, however, is not supported by substantial evidence. The ALJ observed that Thompson suffered

trochanteric bursitis [3] "caused by the presence of the pins in her left hip" (A.R. 28); bursitis is characterized by "pain, localized tenderness, and limitation of motion," *The Merck Manual* 1267 (15th ed. 1987), and has been found by the Eleventh Circuit to be reasonably capable of causing disabling pain. *Sewell v. Bowen,* 792 F.2d 1065, 1068 (11th Cir.1986).[4] Dr. Goshgarian's statement that Thompson's pins "can cause pain on walking, on standing, on changing positions from walking to standing" but that "[o]nce in this position, they tend not to cause pain" (A.R. 184) may undermine the credibility of Thompson's complaints, perhaps, but does not in itself vitiate the pain-producing *capability* of bursitis as a general matter and thus does not excuse the ALJ from considering the subjective evidence of pain.[5] Because Thompson's bursitis—and therefore her pain—was predicated on the presence of pins, which were initially scheduled for removal in February, 1988,[6] it could reasonably have been expected to last the twelve months required for the finding of a disability. In reviewing the ALJ's evaluation of Thompson's pain, therefore, we assume that he found there to exist a sufficient objective source for her pain.

### 3. Subjective Evidence of Pain

■ The record is replete with subjective evidence of Thompson's alleged disabling pain. Thompson herself testified that she experienced pain in her left hip and knee that prevented her from putting weight on her left leg for more than a "few minutes

---

F.2d 623, 626 (4th Cir.1979). Neither party in this case argues that S.S.R. 88–13 represents an unreasonable method for assessing complaints of pain.

3. Bursitis can be either acute or chronic and in both incarnations involves the inflammation of a bursa, a "saclike cavit[y] filled with synovial fluid and located at tissue sites where friction occurs, such as where tendons or muscles pass over bony prominences." *The Merck Manual* 1267 (15th ed. 1987).

4. The ALJ noted additionally a "probable diagnosis of degenerative medial cartilage" in the knee (A.R. 28), but because we find that Thompson's bursitis could be reasonably expected to

cause the alleged pain, we do not consider the implications of this further impairment.

5. It is not clear from Dr. Goshgarian's statement, moreover, precisely *when* the pins tend not to cause pain; "this position" appears to refer to the standing or walking positions, but such a reading is inconsistent with Dr. Goshgarian's assertion that standing and walking *can* cause pain.

6. This information was available to the ALJ at the time he made his decision; moreover, Thompson later submitted an affidavit to the Appeals Council stating that the anticipated date of removal of the pins had been pushed back to May 19, 1988 (A.R. 18).

at a time" (A.R. 56); she additionally experienced pain when lying, when "twisting or turning in any which way," and when "in any position over a few minutes" (A.R. 60–61). She stated that sitting was "murder" and that she always had to lean to her right when sitting; at home, she testified, she would either sit on the side of a day bed, which was higher than a normal bed or chair, or lie down with her feet and legs elevated (A.R. 62). When asked to describe this pain, Thompson characterized it as a "soreness" and a pain "that shoots down to [her] knee" (A.R. 60). Helen Watson, a witness at the administrative hearing, confirmed that Thompson alternated between sitting at the end of a bed and lying with her feet elevated (A.R. 76). She testified that Thompson's pain and discomfort were often revealed in her facial expressions and opined that Thompson could not sit "for any period of time" even if she were permitted to stand up occasionally (A.R. 78–80).

■ In his decision, the ALJ summarized the testimony of both Thompson and Helen Watson (A.R. 27) but did not analyze it or evaluate it; he simply concluded that "[a]lthough [Thompson] still experiences some left hip area pain with extended standing and walking, [she] is able to sit for 6 to 8 hours at a time without difficulty" (A.R. 29). This conclusion necessarily reflects a rejection of Thompson's and Watson's testimony, for both witnesses unequivocally stated that Thompson's pain prevented her from sitting for even a short period of time. An ALJ is entitled to dismiss subjective evidence of pain but only "after weighing [it] against other evidence in the record and after considering the interest and credibility of the witnesses." *Munks v. Heckler*, 580 F.Supp. 871, 874 (N.D.Ill.1984). While the initial assessment of the credibility of witnesses and the sincerity of subjective complaints of pain is reserved to the administrative law judge, *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir.1987), and "should not be discarded lightly," *see Beavers v. Secretary of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978), we cannot defer to the ALJ's assessment unless we are satisfied that a

credibility determination was in fact made. *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Where an entire line of evidence contradicts the Secretary's conclusion, a "minimal level of articulation of the ALJ's assessment of the evidence" is essential to allow for meaningful review of the Secretary's decision. *Id.* at 79; *see also Munks*, 580 F.Supp. at 874. A failure to evaluate and provide specific reasons for rejecting probative evidence constitutes grounds for a remand to the Secretary. *Munks*, 580 F.Supp. at 874 (case remanded where the testimony of claimant's wife was not mentioned by ALJ); *see also Szulyk v. Heckler*, 575 F.Supp. 1266, 1269 (N.D.Ill.1984) (case remanded where ALJ merely declared that plaintiff's complaints of pain were "not entirely credible").

■ To be sure, the ALJ need not discuss and evaluate every piece of evidence presented in connection with a claim for benefits, *see Walker*, 834 F.2d at 643, but *Zblewski* does require that he "articulate his rationale sufficiently to allow meaningful review." *Walker*, 834 F.2d at 643. When the ALJ's reasoning is clear, the requirement of explicit articulation is relaxed. *See Abrogast v. Bowen*, 860 F.2d 1400, 1406 (7th Cir.1988); *Imani v. Heckler*, 797 F.2d 508, 511 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986). In the present case, however, the ALJ failed to analyze an entire line of evidence, not merely one piece. And the ALJ's failure to explain his apparent rejection of Thompson's and Watson's testimony obscures his rationale and prevents us from evaluating the validity of this rejection. While the Secretary need not credit subjective complaints of pain, he cannot simply ignore them when they are based on a medically determinable impairment. *See Pearson v. Bowen*, 648 F.Supp. 782, 788–89 (N.D.Ill.1986); *cf.* S.S.R. 88–13. It is similarly improper to reject subjective complaints on the basis of a lack of objective evidence supporting the severity of the alleged pain. *Marcus*, 615 F.2d at 28. We are simply unable to ascertain whether the ALJ's decision reflects a finding that the witnesses were not believable or an improp-

er determination that the objective evidence of pain was insufficient, and therefore the decision cannot stand.[7]

## CONCLUSION

For the foregoing reasons, Thompson's motion for summary judgment is granted and the Secretary's is denied. The case is remanded to the Secretary for further consideration of Thompson's allegations of disabling pain.

---

**7.** Although we agree with Thompson's argument that the ALJ improperly evaluated her complaints of pain, we do not think that reversal is warranted. Dr. Goshgarian stated that her femur was *healed and clinically solid* as of December 11, 1987, although he admitted that Thompson stood a 25% chance of developing avascular necrosis within the next 14 months. He additionally remarked that Thompson's pins tend not to cause pain "once in this position" (A.R. 184). We have already commented on the *ambiguity of this statement,* but we acknowledge that it could be read to contradict Thompson's assertions of pain.