9 F.3d 112
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Bobbie Jean GENTRY, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-4114.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 26, 1993.*
Decided Oct. 28, 1993.
 
 Before POSNER, Chief Judge, and RIPPLE and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The Secretary of Health and Human Services ("the Secretary") denied Bobbie Jean Gentry's claims for disability insurance benefits and for supplemental security income benefits under the Social Security Act ("the Act"). 42 U.S.C. Secs. 416(i), 423(d), 1382 & 1382c(a). The district court entered judgment in favor of the Secretary, and we affirm.
 
 
 2
 The standard of review in disability cases requires the decision of the Secretary--in this case, the Administrative Law Judge's ("the ALJ") decision of January 29, 1992, 20 C.F.R. Sec. 404.981--to be affirmed if it is legally sound and supported by substantial evidence. Ehrhart v. Secretary, 969 F.2d 534, 538 (7th Cir.1992); Scivally v. Sullivan, 966 F.2d 1070, 1075 (7th Cir.1992). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Scivally, 966 F.2d at 1075 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted)). Under this standard, a reviewing court considers the entire record but may not "decide facts anew, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." Id. (internal quotations, citations omitted).
 
 
 3
 The ALJ found that Gentry has a somatoform disorder[1] which does not meet a listed impairment in appendix 1. 20 C.F.R. Sec. 404.1520(d); Pt. 404, Subpt. P, App. 1. She further found that Gentry has "the residual functional capacity to perform work-related activities except for work involving understanding, remembering and carrying-out complex tasks, or tasks involving excess social interaction and extreme work stressors." Decision at 6 (citing 20 C.F.R. Secs. 404.1545 and 416.945). Because her past work at the bindery did not involve these activities, the ALJ concluded that Gentry could perform her past work. 20 C.F.R. Sec. 404.1520(e).
 
 
 4
 Gentry asserts that because the ALJ's assessment of her credibility was "patently wrong," the Secretary's decision must be reversed. However, we have recognized that "determinations of credibility often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.' " Kelley v. Sullivan, 890 F.2d 961, 964 (7th Cir.1989) (citations omitted). In that circumstance, it is generally understood that a reviewing court does not reconsider credibility determinations made by the ALJ so long as they find some support in the record. Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir.1991).
 
 
 5
 Gentry argues only that the incredibility of her complaints was a symptom of her somatoform disorder so the ALJ could not discredit her on that basis. A somatoform disorder does not insulate a claimant from an ALJ's credibility finding. The ALJ considered all the evidence and based the credibility finding on Gentry's testimony and demeanor at the hearing. The finding is supported by the record.
 
 
 6
 Gentry also challenges, solely because of her deficiencies in concentration, the ALJ's conclusion that she can perform her past relevant work as not supported by substantial evidence. Gentry testified that she had worked for the bindery for about 17 or 18 years, until 1989. Her job required that she read each binder to assure that the name was correctly printed on it. She was "[l]ike an inspector" looking for mistakes. She did little assembling or packing. Most of the time she could sit the entire shift but sometimes she was required to stand for eight hours. She did very little lifting, nothing more than 20 pounds. She did no writing or supervision. The ALJ concluded that "this position did not require performing more than simple unskilled tasks. It was not highly stressful and did not require an inordinate amount of social interaction."
 
 
 7
 Three medical opinions concerning Gentry's mental impairment were before the ALJ. Dr. Susan Fredriksen, a psychiatrist, did a consultative examination on October 10, 1990, at the request of Gentry's counsel. In her written report, she concluded: "Given her history and current presentation her ability to maintain attention and concentration would be markedly impaired." Dr. Richard Zaloudek, a Board-certified psychiatrist, attended the hearing as a medical advisor. He concluded that of the eight factors comprising the "sustained concentration and persistence" category of the "Mental Residual Functional Capacity Assessment," Gentry was markedly impaired on only one factor. His opinion was based only on the testimony and record at the hearing, and specifically assumed Gentry was credible. Dr. Darrell Snyder, a licensed clinical psychologist, performed a consultative examination at the request of the ALJ two months after the hearing. He concluded that Gentry's pace and persistence was appropriate but that her persistence diminished in her attempt to complete one of the diagnostic tests. Dr. Snyder's overall judgment of Gentry's psychological, social, and occupational functioning--her "Global Assessment of Functioning Scale" ("GAF")--was 70 which means: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DSM III-R at 12.
 
 
 8
 The ALJ accorded the greater weight to Dr. Snyder's opinion. As a reviewing court, we may not reweigh the evidence or substitute our own judgment for that of the Secretary unless the ALJ's determination is patently wrong. Wolfe v. Shalala, 997 F.2d 321, 326 (7th Cir.1993). Contrary to Gentry's argument, Dr. Snyder's narrative comments are not inconsistent with his GAF determination. Having observed Gentry's demeanor at the hearing, the ALJ could properly credit Dr. Snyder's conclusions as more consistent with the entire record. Thus, we conclude that the ALJ's decision is supported by substantial evidence.
 
 
 9
 Gentry objects to the ALJ's failure to discuss Dr. Zaloudek's testimony which she believes is helpful to her. We have stated that the ALJ need not evaluate in writing every piece of testimony and evidence submitted. Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir.1993); Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir.1985); Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir.1984). What we require is that the ALJ sufficiently articulate her assessment of the evidence to "assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning." Stephens, 766 F.2d at 287. If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required. Zblewski, 732 F.2d at 78-79. But this is not such a case. The ALJ explicitly addressed Dr. Frederickson's and Dr. Snyder's reports and conclusions. Dr. Zaloudek's testimony fell between these two. Although Dr. Zaloudek stated that Gentry was markedly impaired on one of the eight concentration factors, he concluded that she was not markedly impaired on the other seven. Moreover, the ALJ could properly give Dr. Zaloudek's testimony little weight since it was based, at least in part, on Gentry's credibility.
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal is decided on the briefs and record
 
 
 [1]
 The Diagnostic and Statistical Manual of Mental Disorders (3d ed. Revised) (DSM III-R) (American Psychiatric Association 1987) at 255 defines "somatoform disorders":
 The essential features of this group of disorders are physical symptoms suggesting physical disorder (hence, Somatoform) for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption, that the symptoms are linked to psychological factors or conflicts. Unlike in Factitious Disorder or Malingering, the symptom production in Somatoform Disorders is not intentional, i.e., the person does not experience the sense of controlling the production of the symptoms. Although the symptoms of Somatoform Disorders are "physical," the specific pathophysiologic processes involved are not demonstrable or understandable by existing laboratory procedures and are conceptualized most clearly by means of psychological constructs. For that reason, these are classified as mental disorders.