Kenneth E. SHIPMAN, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendants.

No. 86 C 20122.

United States District Court, N.D. Illinois, W.D.

April 2, 1987.

Charles K. Day, Perz, McGuire, Condon & Ridge, Chicago, Ill., for plaintiff.

Keith Syfert, Asst. U.S. Atty., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

This is an action to review a final decision of the Secretary of Health and Human Services (Secretary) which awarded the plaintiff disability insurance benefits for the period of time extending from May 2, 1984 until August 6, 1985. Jurisdiction is invoked under the Social Security Act as amended. 42 U.S.C. § 405(g). On the basis of the briefs and the administrative record and for the reasons set out below, the court grants the plaintiff's motion for summary judgment. Accordingly, the court affirms in part and reverses in part the Secretary's final decision.

## PROCEDURAL BACKGROUND

The plaintiff filed an application for disability insurance benefits on July 2, 1984. In his application, the plaintiff alleged that he became disabled on May 2, 1984 due to a neck injury and the inability to use his left arm and shoulder (T.R. 74). The Secretary denied the application on August 23, 1984 (T.R. 84–85).

On January 8, 1985, the plaintiff filed a second application for disability benefits alleging forthcoming neck surgery as the reason for his disability (T.R. 89). This application was also denied both initially and upon reconsideration (T.R. 105–06, 115–16). The plaintiff requested and received a hearing before an Administrative Law Judge (ALJ) who heard the claim on August 7, 1985 (T.R. 22). Upon a *de novo* consideration, the ALJ determined the plaintiff to be disabled for a closed period of time extending from May 2, 1984 through August 6, 1985 (T.R. 14).

The ALJ's findings became the Secretary's final decision when the Appeals Council denied the plaintiff's request for review (T.R. 34). The plaintiff then initiated this action which is before the court on the plaintiff's and the Secretary's cross motions for summary judgment.

## FACTUAL BACKGROUND

The plaintiff was born May 30, 1935 and is left-handed (T.R. 89, 29). The plaintiff has a tenth-grade education (T.R. 82). The plaintiff's work experience has consisted, primarily, of farm work and truck driving (T.R. 99–104).

On May 22, 1984, while driving a semi-tractor trailer, the plaintiff was involved in an accident which caused injuries to his neck, left arm and left shoulder. Specifically, the plaintiff was diagnosed as having a possible brachial plexus injury of the left arm with palsy of the left deltoid and biceps and strain of the cervical, thoracic and lumbar spine (T.R. 137).

The plaintiff was treated immediately and admitted to a local hospital on the following day. Shortly thereafter, upon complaints of continued pain and weakness in the affected areas, the plaintiff was transferred to St. Anthony's Hospital in Rockford where he was examined by Dr. Yake, a neurosurgeon, and Dr. Nigam, an orthopedic surgeon (T.R. 157–60). Dr. Yake had a cervical myelogram performed on the plaintiff which revealed narrowing of the cervical spinal canal and cervical spondylosis (T.R. 165). On May 23, 1984, on the basis of testing and consultation

with Dr. Nigam, Dr. Yake performed a decompressive cervical laminectomy and cervical foraminotimies of the C6 and C7 nerve roots (T.R. 171).

After this surgery, Dr. Yake referred the plaintiff and all requests for disability information to Dr. Nigam who replaced Dr. Yake as the treating physician (T.R. 201, 231). Dr. Yake did examine the plaintiff in late 1984 and told the plaintiff that he could return to light work (T.R. 33, 28). Dr. Nigam examined the plaintiff regularly between the accident and the hearing, seeing the plaintiff at least five times (T.R. 237, 230). Each time Dr. Nigam examined the plaintiff, the doctor found weakness in the plaintiff's left arm and shoulder (T.R. 237).

On February 1, 1985, Dr. Nigam performed an anterior discectomy and fusion of C4–5, C5–6 and C6–7 (T.R. 205). In a letter dated February 22, 1985, Dr. Nigam advised the Bureau of Disability that the plaintiff would be unable to do any work for at least five to six months following the surgery (T.R. 227). However, several residual functional capacity assessments performed for the benefit of the Secretary by physicians who examined the plaintiff's record without actually examining the plaintiff indicated that by May of 1985, the plaintiff had the residual functional capacity to perform his old job as it is normally performed in the national economy (T.R. 194, 236).

At the hearing the plaintiff testified that he had performed varied, light house chores (T.R. 53). The plaintiff testified that he thought that he could walk three or four blocks without any trouble (T.R. 54). The Plaintiff also testified that until mid July of 1985, he was restricted from lifting more than five pounds. In mid July, however, Dr. Nigam told the plaintiff that he could lift any amount of weight with which he felt comfortable (T.R. 56). The plaintiff further testified that, although he had never made such an attempt, he could probably lift ten pounds, but he did not think he could repeat this task ten times within an hour (T.R. 56–57). The plaintiff also speculated that he might be able to do some

work involving sitting, standing and walking as along as no one of these activities extended for too long. However, the plaintiff qualified this speculation by stating that he did not really know whether he could return to such work as he had not tried it and that his doctor had not released him to work yet (T.R. 63, 65).

After the hearing, the plaintiff underwent another examination by Dr. Nigam. The doctor found continued pain and weakness in the plaintiff's neck, left arm and shoulder (T.R. 239). Dr. Nigam opined that the plaintiff was totally disabled from any kind of work involving six to eight hours of sitting, standing or walking or lifting any material of more than four or five pounds (T.R. 239).

Based upon the reports of treating and consulting physicians and upon testimony presented at the hearing, the ALJ made the following findings of fact.

1. The claimant met the disability insured status requirements of the Act on May 2, 1984, the date the claimant stated he became unable to work, and continues to meet them through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity since May 2, 1984.

3. The medical evidence establishes that the claimant has a status post cervical spine fusion and left arm weakness, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P., Regulations N. 4.

4. The claimant does not experience pain which precludes the performance of light work activity on a sustained basis.

5. Beginning on May 2, 1984, and continuing through August 6, 1985, the severity of the claimant's impairments prevented him from heavy lifting and carrying, or performing bilateral fine and gross manipulations. From May 2, 1984 through August 6, 1985, the claimant did not have the residual functional capacity to perform any level of work activity on a sustained basis, and, therefore, there were no jobs existing in significant numbers in the national economy that he was able to perform. Regulation 404.1520(f) requires, therefore, that he be found "disabled" from May 2, 1984, through August 6, 1985.

6. As of August 7, 1985, and thereafter, the claimant regained the residual functional capacity to sit, stand and walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally, and use his arms and legs for the operation of arm and leg controls.

7. The claimant's past relevant work as a truckdriver as generally performed in the national economy requires only the ability to sit, stand, or walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally, and operate arm and leg controls.

8. As of August 7, 1985, and thereafter the claimant was able to perform his former job as a truck driver as generally performed in the national economy. Regulations 404.1520(3) requires that he be found "not disabled" beginning August 7, 1985.

9. Beginning May 2, 1984, the claimant was under a disability as defined in the Social Security Act, and his disability continued through August 6, 1985, but not thereafter.

## DISCUSSION

On appeal, the Federal District Court does not review the administrative decision *de novo*. Instead, the court examines the entire record and, based on that examination, determines whether or not the ALJ's findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Neither party contests findings one through five or finding seven. The effect of findings one through five is to establish that the plaintiff was disabled from May 2, 1984 through August 6, 1985. Finding seven simply describes the activities required in the performance of the plaintiff's past relevant work as it is normally performed in the national economy.

The controversy before this court involves findings six, eight and nine which have the effect of denying disability benefits to the plaintiff for any time after August 6, 1985. The Social Security Administration has promulgated a regulation which provides that an individual shall not be disabled if he retains the capacity to perform past relevant work. 20 C.F.R. § 404.-1520(e). Finding seven, which is uncontested, describes the demands required for the work of truck driving as it is generally performed in the national economy, namely, "the ability to sit, stand or walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally, and operate arm and leg controls." Finding six states that as of August 7, 1985, the plaintiff regained the residual functional capacity to perform the activities enumerated in finding seven. Finding eight simply carries findings seven and six to their natural conclusion, that as of August 7, 1985, the plaintiff was no longer disabled. Finding nine concludes that the plaintiff was disabled, but only from May 2, 1984 through August 7, 1985.

The issue which this court must settle is whether there is substantial evidence in the record as a whole to support a finding that as of August 7, 1985, the plaintiff "regained the residual functional capacity to sit, stand and walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally and operate arm and leg controls." In order to support this finding, the evidence must indicate a change in the plaintiff's medical condition on or near August 7, 1985. Evidence suggesting that the plaintiff never suffered a disability or regained the ability to do past relevant work at some earlier point in time is immaterial because the ALJ found the plaintiff to be disabled until August 7, 1985

and thus discredited any evidence to the contrary.

The Secretary forwards, *inter alia,* a residual functional capacity assessment, a work release by Dr. Yake, and the fact that the plaintiff worked briefly in late 1984 as evidence that the plaintiff regained the residual functional capacity to perform his past relevant work. The residual functional capacity assessment, Dr. Yake's work release and the plaintiff's brief period of employment indicate that the plaintiff regained the residual functional capacity to perform his past relevant work by April of 1985 at latest (T.R. 232, 238, 34–35). This evidence is discredited by the ALJ's finding that the plaintiff was actually disabled until August 7, 1985. Therefore, this evidence provides absolutely no support for a finding that the plaintiff's condition changed as of August 7, 1985.

The Secretary also contends that Dr. Nigam's letter of February 22, 1985, shows an expectation that the plaintiff could return to work sometime in July or August. While the opinion of a treating physician is entitled to great weight, *Allen v. Weinberger,* 552 F.2d 781, 785 (7th Cir. 1977), there remain two serious problems with the Secretary's contention. First, the Secretary misrepresents the substance of Dr. Nigam's statement. Dr. Nigam actually stated that the plaintiff would be disabled for "*at least* five to six months and at that time he *may* be able to do some work" (emphasis added). This statement is hardly an expectation. This statement is actually nothing more than qualified speculation. Second, in addition to overstating the doctor's opinion, the Secretary would have the court discount other statements based on later examination which support continued disability and instead have the court focus on this statement made at an isolated point in time. When there is a continuous medical record, the court must examine everything in context and not focus on one isolated point in time. *Cassiday v. Schweiker,* 663 F.2d 745, 748–49 (7th Cir.1981). Dr. Nigam's opinions, when examined in context and in their entirety, actually run counter to the ALJ's finding

that the plaintiff regained the capacity to perform his past relevant work on August 7, 1985.

As of August 23 and based on continuous examinations, the latest of which took place on August 8, 1985, Dr. Nigam was of the opinion that the plaintiff could do no work which involved "six to eight hours of sitting, standing or walking or lifting any material of more than four to five pounds." As this court stated above, Dr. Nigam's opinion as treating physician is entitled to great weight. The fact that Dr. Nigam's statement is in the form of a conclusion which laymen can understand does not diminish its value in indicating the severity of the plaintiff's injury. *Allen*, 552, F.2d at 785.

■ Despite the fact that the ALJ must discuss all relevant medical evidence, *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984), the ALJ failed to mention Dr. Nigam's letter of August 23, 1985 aside from a one sentence summary of the doctor's findings. The only time the ALJ is not bound to discuss such evidence when it is based upon clinical examination and relevant to the question at hand, as with the case at bar, is if the evidence is not credible. *Id.* However, if the ALJ rejects the treating physician's opinion as not credible, he must make a determination to that effect and articulate his reasons for so determining. *Zblewski v. Schweiker*, 732 F.2d 75, 778–79 (7th Cir.1984); *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982); *Holndoner v. Schweiker*, 542 F.Supp. 739, 742 (N.D.Ill.1982). The ALJ does not find or give any indication that Dr. Nigam's opinion is unworthy of consideration due to a lack of credibility. Thus, this court is bound to review a record in which Dr. Nigam's opinion carries great weight and which contradicts the ALJ'S finding that the plaintiff regained the capacity to perform his past relevant work.

The only pieces of evidence that could even arguably be said to support the Secretary's decision are the plaintiff's testimony that Dr. Nigam released him to lift weights with which he felt comfortable, the plaintiff's speculative testimony as to what he might have been able to do and the judge's observations of the plaintiff's physical condition at the hearing.

The impact of Dr. Nigam's release of the plaintiff to lift weight with which the plaintiff felt comfortable serves a rehabilitative purpose rather than an assessment purpose. For rehabilitation to occur, an injured individual must slowly stretch his limits. Dr. Nigam's instruction, clearly made for rehabilitative purposes, does not indicate the plaintiff's ability to lift more than five pounds but rather provides the plaintiff with a method of pacing his rehabilitation. Nor does the plaintiff's testimony regarding the ability to lift ten pounds in conjunction with Dr. Nigam's release give rise to an inconsistency with Dr. Nigam's letter of August 23, 1985. The plaintiff's testimony, taken in context, supports a conclusion that the plaintiff had the ability to lift ten pounds, but only infrequently. Dr. Nigam's letter did not say that plaintiff was unable to lift more than four or five pounds. The letter stated that the plaintiff could not do work which required the lifting of a material greater than four or five pounds. The difference between these two propositions is that while an individual may be able to do a certain task once, he may not be able to do that task on a sustained basis. Finally, the ALJ's observations would be valid in assessing the credibility of the doctor or the plaintiff, but could not be used for independent medical findings. *Whitney*, 695 F.2d at 788; *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985). However, the ALJ made no credibility determinations so his observations are immaterial.

■ The record as a whole, therefore, does not support the finding that the plaintiff regained "the residual functional capacity to sit, stand and walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally and operate arm and leg controls." The only support for such a finding is a statement by the plaintiff which was taken out of context, and a release by Dr. Nigam made for purposes other than assessment. On the other hand, contrary to the ALJ's finding is the

plaintiff's testimony that he could not perform the enumerated activities on a sustained basis and Dr. Nigam's letter, which this court is bound to afford great weight, stating that as of August 23, Dr. Nigam found the plaintiff to be unable to perform any work involving sitting, standing or walking for six to eight hours or the lifting of material in excess of four to five pounds.

This court finds that this record, taken as a whole, does not contain enough evidence for a reasonable mind to conclude that on August 7, 1985, the plaintiff regained, "the residual functional capacity to sit, stand and walk for 6 to 8 hours per day, lift up to 10 pounds frequently and up to 20 pounds occasionally...." Accordingly this court reverses the Secretary's decision that the plaintiff ceased to be disabled on August 7, 1985 and holds that the plaintiff remains disabled until such time as the Secretary is able to show that the plaintiff has the ability to perform past relevant work or enter into other substantial gainful employment.