930 F.2d 25
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Betty CHIARAMONTE, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 89-3313.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 3, 1991.
Decided April 15, 1991.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff Betty Chiaramonte appeals from the district court's grant of the Secretary of Health and Human Service's motion for summary judgment. The Secretary had denied Chiaramonte's application for disability insurance benefits and supplemental security income. 42 U.S.C. Secs. 423(d)(1)(A) and 1382c(a)(3)(A). Chiaramonte challenges the sufficiency of the evidence.
 
 
 2
 Our review in this case is limited. We must affirm the final decision of the Secretary if it is supported by substantial evidence. Anderson v. Sullivan, No. 90-2344, slip op. at 4 (7th Cir. Feb. 19, 1991). We do not reweigh the evidence or reconsider credibility determinations. Id. Based on the comprehensive discussion of the evidence in the district court's opinion, we hold that the Secretary's decision to deny benefits is supported by substantial evidence.
 
 
 3
 Chiaramonte charges that the district court impermissibly rewrote the ALJ's decision. Although the ALJ's findings were scanty, they were adequate. See Schmidt v. Sullivan, 914 F.2d 117, 119 (7th Cir.1990). The ALJ also stated that he had carefully considered all the evidence in the record. The district court's opinion does no more.
 
 
 4
 Finally Chiaramonte argues that the report of a non-examining physician should not be given greater weight than that of a treating physician. That was not the case here. The treating physician stated that Chiaramonte could not lift five pounds. Chiaramonte testified that she could lift between ten and fifteen pounds. This dispute is not between treating and non-treating physicians, but between a doctor and his patient. The ALJ was entitled to believe the patient.
 
 
 5
 For these reasons and the reasons stated in the opinion of the district court, the decision to grant summary judgment in favor of the Secretary is
 
 
 6
 AFFIRMED.
 
 
 7
 BETTY CHIARAMONTE, Plaintiff,
 
 
 8
 vs.
 
 
 9
 OTIS R. BOWEN, Secretary of Health and Human Services, Defendant.
 
 
 10
 No. 88 C 5838.
 
 MEMORANDUM OPINION AND ORDER
 
 11
 The plaintiff seeks judicial review of a final decision of the Secretary of Health and Human Services which denied her application for disability and disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"). According to the record, the plaintiff filed her application for disability benefits on August 20, 1984, alleging that she had become disabled and unable to work on June 6, 1983, at age 47, because a disc had been removed from her lower spine. The application was denied initially, and because the plaintiff failed to appeal the ineligibility determination, it became final and binding. Then on February 24, 1986, plaintiff filed a second application for a period of disability and disability insurance benefits, and, in addition, she filed this time her first application for SSI benefits. Again she alleged that she had become disabled to work on June 6, 1983, because she had a back problem and had undergone a laminectomy.[1] The Social Security Administration denied the application for the requested benefits "initially and upon reconsideration." Following the administrative denial, the ALJ (Administrative Law Judge) considered the case de novo, and on October 22, 1987, found that the plaintiff was not entitled to disability or SSI benefits because she retained a "residual functional capacity to perform a full range of light work." After the Appeals Council declined further review of her application, the ALJ's decision became the final decision of the Secretary of Health and Human Services.
 
 APPLICABLE LAW AND STANDARD OF REVIEW
 
 12
 "Disability" according to the Social Security Act is the inability to engage in any substantial gainful activity due to physical or mental impairment which can be expected to either result in death of last for a continuous period of not less than 12 months. 42 U.S.C. Sec. 416(i), 1382c(a)(3)(A). To qualify for SSI, a claimant must, in addition to proving disability, also satisfy income resource limitations. 42 U.S.C. Sec. 1382(a). The Secretary uses a five step sequential process for evaluating disability:
 
 
 13
 1. If the claimant is working and that work is found to be substantial gainful activity, the claimant is not disabled.
 
 
 14
 2. The claimant must have a severe impairment, i.e., an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. Any claimant who does not have a severe impairment will not be found to be disabled.
 
 
 15
 3. If the claimant has an impairment that is listed or medically equal to a listed impairment in 20 C.F.R., Part 404, subpart P, Appendix 1 ("the listings") he will be found disabled without any consideration of is age, education, or work experience.
 
 
 16
 4. If the claimant's residual functional capacity (RFC) allows him to perform work he has done in the past he is not disabled.
 
 
 17
 5. If the claimant's impairments prevent him from doing his past work, his age, education, previous work experience, and residual functional capacity are considered in determining if he has the ability to do other work where work opportunities are existing in significant numbers in the national economy.
 
 
 18
 20 C.F.R. Secs. 404.1520(a)-(f); 416.920(a)-(f).[2]
 
 
 19
 The Social Security Act provides, in part, that "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, ..." 42 U.S.C. Sec. 405(g). In disability hearings, the ALJ acts as a fact finder for the Secretary. The issue, therefore, on appeal is not whether the evidence indicates that the plaintiff is disabled but whether it supports the Secretary's finding of non-disability. Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987). In accordance with 42 U.S.C. Sec. 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 851 (6th Cir.1986). Therefore, my review of this matter is limited to determining whether there is substantial evidence in the record to support the findings. Id. "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983), quoting Richardson v. Perales, 402 U.S. 389 (1971). Also, it should be noted that substantial evidence can be less than the weight of the evidence. Delgado v. Bowen, 782 F.2d 79, 83 (7th Cir.1986). As a matter for review, the substantial evidence standard requires the court to perform an informed, critical inquiry rather than a cursory review of the administrative ruling. Garfield v. Schweicker, 732 F.2d 605, 610 (7th Cir.1984). Therefore, if, upon thorough review of the ruling, the ALJ's findings are found to be supported by substantial evidence in the record as a whole, the ALJ's decision must be upheld. Smith v. Schweicker, 735 F.2d 267, 270 (7th Cir.1984).
 
 THE ALJ'S RULING
 
 20
 In this case the ALJ, in making his determination regarding whether the plaintiff should be considered disabled within the meaning of the Social Security Act, used the five step analysis previously mentioned (Supra; see 20 C.F.R. Secs. 404.1520(a)-(f); 416.920(a)-(f)), and found that, in step one (1), Ms. Chiaramonte was not working. In step two (2), he found that her impairment was severe. As to step three (3), he found that her "severe history of a lumbar laminectomy" did not meet the requirements of an impairment as listed in Appendix 1 of the Regulations (20 C.F.R. Par 505, Subpart P, Appendix 1). At step four (4) the ALJ found that she no longer had the capacity to perform her past relevant employment as a delicatessen worker. He did, however, find that she retained the residual functional capacity to perform the physical exertion requirements of her work except for that requiring of her heavy lifting or frequent twisting, bending, or turning. He further noted that the plaintiff did not have any non-exertional impairments, and for that matter, the ALJ found that the plaintiff had retained the residual functional capacity to perform a full range of light work. Thus, because he found that she retained the capacity to perform a full range of light work, pursuant to the medical-vocational guidelines in Appendix 2 of the regulations, he found that in step five (5) she must be determined to be not disabled. This finding of an ability to perform a full range of light work is contested by the plaintiff in her claim that it was not supported by substantial evidence. As I stated above, in my review of this matter I must consider the ALJ's decision and determine whether the evidence in relation to step five (5) is "substantial" enough to support his decision.
 
 REVIEW AND ANALYSIS
 
 21
 The purpose of this review is to determine whether ALJ Morad's finding that Ms. Chiaramonte can perform a full range of light work is supported by substantial evidence. Plaintiff asserts that because ALJ Morad found that she is unable to perform her past relevant employment as a delicatessen worker, she has made a prima facie case, shifting the burden to the Secretary to "prove that the claimant retains the capacity to do other kinds of work, a burden which includes the duty to establish by medical evidence that the claimant has the requisite residual functional capacity." O'Leary v. Schweiker, 710 F.2d 1334, 1338 (8th Cir.1983); Smith v. Califano, 637 F.2d 968 (3rd Cir.1981). Plaintiff submits that the Secretary has failed to carry this burden. I disagree.
 
 
 22
 A. Plaintiff's Contention that the ALJ Misstated and Ignored Important Facts from the Record
 
 
 23
 Before addressing the core issue of the case (whether substantial evidence supports the ALJ's finding of her ability to perform a full range of light work), I feel that I must address some preliminary matters raised by the plaintiff. Ms. Chiaramonte asserts that ALJ Morad ignored much of the medical evidence in this case and that he misstated some of the facts. However, the fact that certain findings were not included in the ALJ's decision does not mean that the ALJ did not consider such findings. In fact, as noted in both the plaintiff's and the defendant's briefs, the ALJ's written decision does not necessarily have to recite all relevant evidence. See Orlando v. Heckler, 776 F.2d 209, 213 (7th Cir.1985); Garfield v. Schweiker, 732 F.2d 705, 609 (7th Cir.1984). However, the plaintiff submits, and I acknowledge, that the ALJ must have considered all relevant evidence in his findings. See Garfield v. Schweiker, 732 F.2d 605, 609 (7th Cir.1984); Shipman v. Secretary of H.H.S., 656 F.Supp. 1185 (N.D.Ill.1987). I am of the opinion, nevertheless, that in this case the ALJ's ruling itself reveals that he fully evaluated the medical evidence presented and the findings of the various doctors who had examined the plaintiff. I am convinced that the ultimate determination by the ALJ was based upon all of the relevant evidence in the record. Accordingly, I find that the plaintiff's contention that the ALJ only considered evidence that supported his conclusion is without merit.
 
 
 24
 I also find that the plaintiff's assertion that the ALJ erred by misstating certain facts in his ruling (in particular the claim that she should be considered a person "closely approaching advanced age") is without support, since I am of the opinion that such misstatements as are accounted for are not significant enough to alter his overall determination. Although I recognize that the ALJ mistakenly represented in his ruling that the plaintiff was 48 years of age, I do not agree that her disability must have been found to have existed under the regulations exactly as of June 21, 1985, the day she became 50 years of age. Plaintiff became disabled and "unable" to perform her job when she was close to 48 years of age. At the time of her injury, she had been listed as a "younger individual" according to the Grid. See 20 C.F.R. Part 404, Subpart P, Appendix 1, Rule 201.00(h). The ALJ issued his decision when the plaintiff was 52 years of age, which is considered "approaching advanced age" within the Grid. See 20 C.F.R. Part 404, Subpart P. Appendix 1, Rule 201.00(g). It is clear from the ALJ's findings, however, that he applied Grid rules pertaining to both age categories at the time at which he determined that the plaintiff as not disabled under either age category. See finding # 11, A.R. 14; See also 20 C.F.R. 202.10 and 202.17. Additionally, the Regulation provides that age as a vocational factor will not be applied mechanically in borderline situations. 20 C.F.R. Secs. 404.1563. Since this appears to be such a borderline case, in that it spans several years of her life from the time of injury to the ruling date (48 years of age at the time of injury as opposed to 52 years of age at the time of the ruling), I am unable to conclude that the ALJ erred in his determination of her age for use with the Grid.
 
 
 25
 Lastly, the plaintiff contends that the judge mistakenly referred to the plaintiff as having a "limited education", when she, in fact, should have been categorized as a person with "marginal education." There is a difference. Nevertheless, I find that here this mistake is not a sufficient one to justify altering the determination set forth by the ALJ. Then the Grid rules upon which the ALJ relied to characterize plaintiff's education classify person's as "limited or less." Thus, even though the plaintiff may have had a marginal education, it was within the same category as that of a person with limited education for the purposes of determining benefits, and therefore any error by the ALJ as to the education of the plaintiff is insignificant.
 
 
 26
 B. "Objective Medical Evidence". Does it Fail to Establish that the Plaintiff is Disabled Due to a Back Impairment?
 
 1. Applicable Law
 
 27
 Plaintiff alleges that she was disabled because she had a back problem and had to undergo a laminectomy. To support her claim she alleges that the pain and other symptoms could be disabling. Subjective symptoms, as alleged by the plaintiff, must be corroborated by objective medical evidence. 42 U.S.C. Sec. 412(e)(5)(A) set forth that a claimant's statements "as to ... intensity and persistence of ... pain ... which may reasonably be accepted as consistent with the medical signs and findings" are to be considered in the disability determination process. The Congress has, in its legislative history, stated that any disability determinations should take into consideration subjective allegations of pain only to the extent that they are consistent with medical findings showing a medical impairment and the existence of a medical condition which could produce the pain alleged. S.Rep. No. 98-466, 98th Cong., 2d Sess. 24 (1984). See also Sparks v. Bowen, 807 F.2d 616, 617-618 (7th Cir.1987).
 
 
 28
 In accordance with Sparks v. Bowen, supra, and Section 3 of the Reform Act of 1984 (Pub.L. No. 98-460, 98 Stat.1794), the claimant is required to present either objective medical evidence of the pain itself (see Section 3 of the Reform Act), or evidence that the condition is so severe as to "reasonably" produce disabling pain. See Veal v. Bowen, 833 F.2d 693, 698 (7th Cir.1987). Presently, it is clear, as I shall set out in the following paragraphs, that the objective medical evidence does not support the plaintiff's subjective complaints regarding any disability or impairment. Her back pains may have resulted in discomfort on the job, but an inability to work without some pain does not, alone, determine that the plaintiff is disabled under the Social Security Act, Meredith v Bowen, 833 F.2d 650, 654 (7th Cir.1987).
 
 2. The Record
 
 29
 At this point, I suggest that it would be appropriate for us to look at in logical order the medical history and evidence of her injury.:
 
 
 30
 1. In June of 1983, the plaintiff, while lifting a 30 lb. bucket of cole slaw, injured her back. Upon examination at Northwest Hospital, it was determined that the plaintiff had sustained a slipped disc.
 
 
 31
 2. Later, the plaintiff returned to the hospital complaining that her back pain had worsened and was "radiating" into her right leg. The treating physician noted that her Lasegue test was positive[3] and her straight leg raising test and sensation were diminished to some extent on the right side. However, the physician determined that her reflexes were normal. It was also noted that Ms. Chiaramonte experienced pain on extension and flexion tests. Also, the doctor performed a somatosensory evoked response test ("SSER") which indicated that the plaintiff's spinal SSER's were marginally slow in development. However, there was no significant evidence of lumbar radiculopathy on her right side.[4] A CT scan[5] of the plaintiff's spine revealed a normal L3-L4 disc space and some minimum bulging at L4-L5 and L5-S1. Further, an electromyogram ("EMG")[6] of the plaintiff's right leg and a lumbar myelogram[7] were within the norm.
 
 
 32
 3. In January of 1984, the plaintiff continued to complain of back pain, and at that time, a Dr. Reiser reported that the plaintiff had a herniated disc. An X-ray and CT scan of plaintiff's lumbar spine were performed and these revealed normal findings. A lumbar myelogram was also performed with revealed that the plaintiff had a herniated nucleus pulposus[8] at L4-L5 centrally and a small bulge at L5-S1. It was at this time that the plaintiff underwent a laminectomy to rid her of the protrusion at L4.
 
 
 33
 4. In September of 1984, the plaintiff consulted a Dr. Moffitt, a consultative physician, revealing that her leg pains had improved after the surgery, but that she still had back pain. During his consultation with the patient (and as noted in A.R. 146), Dr. Moffitt found that the plaintiff was able to stand erect, to walk without assistance, to climb off and on the examining table and to arise from a seated position without difficulty. Dr. Moffitt then conducted an orthopedic examination of the plaintiff and noted that she did not experience kyphosis, scoliosis, or lordosis.[9] Additionally, he noted that the plaintiff could forward flex to 50 degrees, extend to 10 degrees, straight leg raise to 80 degrees bilaterally, and laterally flex to the left and right to 15 degrees. In a seated position the plaintiff had a full range of motion in her cervical spine. She also exhibited in her deep tendon reflexes that they were bilaterally equal, that she still had 4/5 strength in her legs, and that she did not experience paralysis, tremors, or abnormal neurological movements. Also she exhibited no atrophy in her legs. He did, however, note that the plaintiff experienced pain in the sacroiliac joints and lumbar paraspinal muscles when she was in a prone position.
 
 
 34
 5. In April of 1986, Dr. Livas, her treating physician, completed a neurological report and spinal disorders questionnaire. On this form, Dr. Livas diagnosed the plaintiff as having a slipped disc and he noted that she had undergone the aforementioned laminectomy.
 
 
 35
 6. In May of 1986, Dr. Livas determined that the plaintiff's range of motion in her spine was normal and that she did not need assistance to walk.
 
 
 36
 7. In July of 1986, Dr. Livas reported that the plaintiff could flex her cervical spine to 45 degrees and could extend her cervical spine to 35 degrees. It was also noted in his report that her reflexes had decreased somewhat, and that she had experienced some motor weakness.
 
 
 37
 8. In November, Dr. Livas completed the spinal disorders questionnaire. He reported that, although the plaintiff had a lumbar laminectomy in January of 1984, she was able to bear full weight two months after the operation. He also noted that the plaintiff experienced lower back pain, some sensory loss on the right side, and "sluggish" reflexes in her right leg, and that her straight leg raising, Lasegue's test and Kernig's tests were positive.[10]
 
 
 38
 3. Discussion of the Record and the Findings Thereof
 
 
 39
 After reviewing the record, I can find no reason to change the ALJ's finding of non-disability. A claimant, in order to be deemed disabled due to a back impairment, must provide evidence of: (1) pain; (2) muscle spasm; (3) significant limitation of motion in the spine; (4) radicular distribution of significant motor loss; (5) muscle weakness and (6) sensory and reflex loss. See Listing Sec. 1.05,20 C.F.R. Part 404, Subpart P, Appendix 1. The record does not show that the plaintiff experienced muscle spasms, atrophy in the legs, or other symptoms of disabling back pain. Additionally, it seems clear that the plaintiff, when tested by both Dr. Moffitt (an orthopedic specialist) and Dr. Libas (her treating physicial), exhibited a near normal range of motion in her cervical spine. Although the record exhibits that she did sustain some sensory loss in her legs, it does appear that she maintains near normal reflexes in her legs. Also, although Dr. Libas noted that the plaintiff experienced some motor weakness, Dr. Moffitt found that the plaintiff could walk without assistance, climb on and off the examining table and arise from a seated position without any difficulty. Despite the fact that the plaintiff does exhibit some reduction in her ability to work, I am not convinced that the recorded evidence establishes that she has a disability within the terms of the Social Security Act "because of the back injury."
 
 
 40
 Early medical evidence, prior to the laminectomy also supports ALJ Morad's finding of non-disability. In 1983, Dr. Cabin administered a somasensory evoked response test. From the test results, Dr. Cabin could state that the plaintiff did not experience lumbar radiculapathy on the right side, and that a contemporaneous lumbar myelogram was normal. In 1984, CT scans and X-rays of the plaintiff's lumbar spine were normal. Subsequently, the ALJ found that the clinical record prior to and after the laminectomy did not support her allegations of disabling pain. Also, he noted that the plaintiff's complaints of limitation and restriction were not entirely credible based on his personal observations of her while in the courtroom. After reviewing all of the medical records and other evidence, the ALJ determined that the plaintiff was not disabled within the terms of the Social Security Act. I am convinced, after reviewing the ALJ's findings, that the ALJ has fulfilled his responsibility of providing substantial evidence in support of his finding of non-disability, thus offsetting any conflicting testimony of the plaintiff.[11]
 
 
 41
 C. Is there Substantial Evidence Supporting the ALJ's Determination that the Plaintiff can Perform a Full Range of Light Work?
 
 
 42
 A social security disability claimant has the burden of providing the existence of a disability, but once the claimant demonstrates an impairment sufficiently severe as to preclude the kind of work in which she was previously engaged, the Secretary must prove that the claimant still can perform some other kind of substantial gainful activity which exists within the national economy. McNeil v. Califano, 614 F.2d 142, 145 (7th Cir.1980). Here, the secretary has produced substantial evidence in relation to her residual functional capacity. Although, the ALJ determined that the plaintiff could not perform her previous duties as a delicatessen worker, he concluded from the record that she could still perform a full range of light work. Upon reviewing the ALJ's findings, it appears obvious that the objective medical evidence does not support the plaintiff's description of her symptoms, nor does it support any functional limitations upon her. Additionally, the plaintiff herself testified that she washed dishes, made beds, dusted, and shopped. These activities alone are in conflict with the assertions of her "incapacitating" pain and functional limitations. It was under these findings that the ALJ determined that her complaints of disabling back pain were not credible.
 
 
 43
 In addition to her own conflicting testimony, a residual functional capacity assessment ("RFCA") was coducted by a Dr. Feinerman, who is a Social Security Agency physician. His tests found that plaintiff was capable of light work.[12] The plaintiff, however, contends that Dr. Feinerman's opinion should not be given as much weight as Dr. Livas, her long-standing physician. I find that under the law plaintiff is incorrect. In Reynolds, v. Bowen, 844 F.2d 451, 455 (7th Cir.1988); (citing Stephans v. Heckler, 766 F.2d 284, 299 (7th Cir.1985)), the court said, in part, that
 
 
 44
 The patients regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability ... [t]he regular physician also may lack an appreciation of how one case compares with other cases. A consulting physician may bring both impartiality and expertise. Thus while lthe treating physician's opinion is important, it is not the final word on a claimant's disability.
 
 
 45
 Although I do not expressly find that the treating physician is incorrect in his findings or that he has other motives for his medical conclusions, I do find that, for the reasons set forth in Reynolds, the treating physician's findings are not to be given any greater weight than those of the other doctors. Thus, although Dr. Feinerman's opinion is not binding on the Secretary, it does constitute a medical judgment which the ALJ must have considered and weighed. Fox v. Heckler, 776 F.2d 738, 742 (7th Cir.1985). It is clear that the ALJ accurately considered and weighed the evidence presented in this matter. His proper reliance on the Medical-Vocational Guidelines to determine that the plaintiff was not disabled, along with the substantial evidence present in the record, assures me that he was not incorrect in his finding of non-disability. Thus, I find that there is substantial evidence in support of the ALJ's determination that the plaintiff can perform a full range of light work.
 
 CONCLUSION
 
 46
 This court having reviewed the administrative record and finding at least substantial evidence to support the findings of fact of the ALJ, accordingly concludes that it was not an error for the Secretary to have denied the plaintiff disability insurance benefits. The defendant's motion for summary judgment is therefore granted.
 
 ENTER:
 
 47
 /S/JAMES B. PARSONS
 
 United States District Court Judge
 DATED: August 21, 1989
 
 
 [1]
 In a laminectomy, the posterior arch of a vertebra is excised. See Stedman's Medical Dictionary 760 (5th ed. 1982)
 
 
 [2]
 The ALJ's decision in this case appears to have been made at step 5, where he determined that she had the ability to do other work existing in significant numbers in the national economy
 
 
 [3]
 A positive Lasegue test indicates that the person's sciatic nerve or lumbar spinal nerves are irritated. See Schmidt's Attorneys' Dictionary of Medicine, L 26-27 (1984). The test involves placing the patient in a reclined position and having her flex her hip while simultaneously moving her ankle back and forth. If this exercise causes pain or muscle spasm in the posterior thigh, this would indicate root or sciatic nerve irritation. See Stedman's at 901
 
 
 [4]
 Radiculopaty is a disease of the spinal nerve roots. See Dorland's at 1303
 
 
 [5]
 CT stands for Computed tomography. This process is the gathering of anatomical information from a cross-sectional plane of the body, presented as an image generated by a computer synthesis of X-ray transmission data obtained in many different directions through the given plane. Stedman's at 1459
 
 
 [6]
 An electromyogram is a graphic representation of the electric currents associated with muscular action. Stedman's at 451
 
 
 [7]
 Myelography consists of X-rays or photographs of the spinal chord after the injection of a radiopaque substance into the spinal arachnoid space. Stedman's at 917
 
 
 [8]
 Nucleus pulposus is a jelly-like substance found in the center of an intervertebral disc. See Stedman's at 967. A herniated nucleus pulposus is a protrusion of tissue within an intervertebral disc through a ruptured disc rim resulting in a herniated mass which may press against the spinal cord. See Schmidt's Attorneys' Dictionary of Medicine, N-58 (1980)
 
 
 [9]
 In kyphosis, the spinal curvature becomes increasingly convex. In scoliosis the normally straight vertical line of the spine deviate appreciably. In lordosis, the lumber and cervical spines become increasingly concave. See Stedman's at 752, 1265, 810
 
 
 [10]
 A Kernig's sign is positive where the patient, when lying upon his or her back and flexing his or her thigh to a right angle with the axis of the trunk, cannot completely extend the leg. See Stedman's Medical Dictionary, 1288 (5th Ed.1982)
 
 
 [11]
 Where, as here, "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ). Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987)
 
 
 [12]
 Dr. Feinerman determined that the plaintiff could lift 20 pounds, frequently lift 10 pounds, push up to 20 pounds, sit and stand and/or walk six hours per day. Each of these findings are consistent with the requirements of light work. 20 C.F.R. Sec. 1404.1567(b)